M3B6PATS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                                    20 CR 188(JSR)
                                          Sentence

JAMES PATTERSON,

              Defendant.

------------------------------x

                                          New York, N.Y.
                                          March 11, 2022
                                          3:00 p.m.
Before:

                       HON. JED S. RAKOFF,

                                          District Judge

                          APPEARANCES

DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
BY:  NICHOLAS FOLLY
     Assistant United States Attorney

WILMER CUTLER PICKERING HALE AND DORR
     Attorney for Defendant
BY:  EMILY SCHULMAN
     ADAM MCCALL

1     THE DEPUTY CLERK:  Will the parties please identify
2 themselves for the record?  Bring the microphone up close to
3 your face.
4     MR. FOLLY:  Good afternoon, your Honor, Nicholas folly
5 for the government.
6     THE COURT:  Good afternoon.
7     MS. SCHULMAN:  Good afternoon, your Honor.
8 Emily Schulman on behalf of James Patterson and with me at
9 counsel table is Adam McCall.
10     THE COURT:  Good afternoon. All right.  We're here
11 for sentence, and the first item of business is to calculate
12 the guideline range, and the presentence report calculates the
13 total offense level at nine and the criminal history category
14 roman numeral I for a guideline range of 4 to 10 months.
15     Any disagreement with that from the government?
16     MR. FOLLY:  Your Honor, we litigated these issues
17 extensively before, and we don't need to redo that here.  The
18 government would just note for the record our position is
19 consistent that we still believe that the loss amount should be
20 the amount of money that was processed through the scheme, and
21 that because of that, that there were 10 victims or more, your
22 Honor has heard us on those arguments for the sentencing of
23 Akhavan and Weigand, but we don't want to be inconsistent here.
24     THE COURT:  Okay.  And defense counsel?
25     MS. SCHULMAN:  We agree with the PSR calculation, your

M3B6PATS

1   Honor.

2               THE COURT:  So do I.  So I will adopt that guideline
3   calculation.  And I will also adopt the presentence report.

4               However, the government has indicated it intends to
5   move at this time for a non-guideline sentence pursuant to
6   section -- what is it 3553(e) and 5K1 of the guidelines.

7               MR. FOLLY:  That is correct, your Honor.  We do move
8   at this time pursuant to both those provisions.  And if your
9   Honor would like, I'm happy to be heard on sentencing.

10              THE COURT:  No, you don't have to because I'm going to
11  give him time served.  Of course, you can always talk me out of
12  it by droning on, but thank you anyway.

13              So the motion is granted.

14              Anything, Ms. Schulman, you want to say?

15              MS. SCHULMAN:  Not with respect to that sentence, your
16  Honor.

17              THE COURT:  Not that I can resolve.  You have the
18  right to be heard if you wish, Mr. Patterson.

19              THE DEFENDANT:  Thank you, your Honor.  May I take off
20  my mask?

21              I've always strived to live up to the core values by
22  working in the Air Force, by working hard, operating with
23  integrity, and helping others.  And I'm greatly ashamed I
24  failed to live up to those values.  I failed myself, my family,
25  and my country.

1          I'm deeply ashamed to be standing before you here a
2  convicted criminal.  This has been the greatest personal
3  failure of my life.  I put myself in this position, and I
4  failed to act to end it, and I take full responsibility for my
5  actions.
6          When Eaze's board asked me to step in as interim CEO,
7  I should have immediately ended my relationship with
8  Ray Akhavan instead of continuing to work with him.  Instead, I
9  participated in a scheme of fraud, deceit, and deception.  I
10 was scared, but there's no excuse for not doing the right
11 thing.  I'm completely humiliated by my actions.
12          The last several years have been incredibly difficult.
13 It should have been the most joyous time in my life.  The birth
14 of my children and the first year of fatherhood have been
15 clouded by uncertainty and darkness.  And the fact I only have
16 myself to blame for that leaves me in despair.
17          This experience has promoted a lot of introspection,
18 and I've dug deep to try to figure out how this could have
19 happened and how it can never happen again.  I'm committed to
20 making amends, earning back people's trust, and proving myself
21 worthy of love and support that I receive from my friends and
22 family, especially my wife, who's been more than I could have
23 ever asked for throughout this.
24          This experience has also been a catalyst to redouble
25 my efforts in service of others.  I have been so fortunate to

have a great education and all of the opportunities that has afforded me.  And I'm aware that other people have to navigate the criminal justice system with far fewer resources than I have.  That's why a year ago I helped start the Prison Professors Charity that creates educational and job training materials for people who are incarcerated.  I actually believe education is the key to success.

Becoming a father has had a profound impact on me.  Setting an example of ethical behavior and moral conduct for my children is my greatest responsibility.  They are too young to understand what's going on right, now but some day, I'll tell them about this, and I'll tell them even though I was ashamed for what I did, I owned up to it and I faced the consequences.  I'll tell them to always tell the truth no matter what, even when it's hard, and especially when it's hard.

I'm grateful to the Court for the opportunity to address you directly.

I'm going to reiterate my sincere remorse for my actions.  I can't erase what I did, but I will spend the rest of my life atoning for it.

Thank you.

THE COURT:  So thank you very much.  I would say that is one of the most heartfelt statements I heard from a defendant in quite sometime.  If I weren't already impressed with the substantial assistance you rendered in this case,

certainly, I would be further impressed by those heartfelt statements. So thank you for sharing it with the Court.

So the sentence of the Court is that the defendant is sentenced to time served. I don't really think there's any need for a fine to be imposed either. There is, however, a $100 special assessment, which is mandatory and must be paid.

In terms of forfeiture, I've been presented with a consent order of preliminary order of forfeiture, and I have signed it and will hand it to my courtroom deputy to docket. And the defendant filing will be sentenced to two years of supervised release. The terms of supervised release are first the mandatory conditions that the defendant not commit any further federal, state, or local crime; that he not unlawfully possess a controlled substance; and that he cooperate in the collection of DNA.

The further condition, the drug testing condition, is suspended based on the Court's determination that the defendant poses a low risk of future substance abuse.

There will also be imposed standard conditions 1 through 12. They appear on the face of the judgment. That will be gone over with the defendant by the probation officer when the defendant reports to begin his period of supervised release, which he must do within three business days of today.

There also will finally be imposed the special conditions; namely that he be supervised by the district of his

1  residence.
2          Before I advise the defendant of his right of
3  appeal -- oh, is there any need to add a special condition, to
4  continue cooperation at this point?
5          MR. FOLLY:  No, your Honor.  There is not.
6          THE COURT:  Very good.  Before I advise the defendant
7  of his right of appeal, is there anything else either counsel
8  need to raise with the Court?
9          Anything from the government?
10         MR. FOLLY:  No, your Honor.
11         THE COURT:  Anything from the defense?
12         MS. SCHULMAN:  Yes.  Excuse me, briefly, your Honor.
13 With respect to the standard conditions of supervised release,
14 we ask that the condition that he, Mr. Patterson, not associate
15 with any --
16         THE COURT:  I'm having a little trouble hearing you.
17 It's probably your mask.  Why don't you go to the rostrum where
18 you can take off your mask?
19         MS. SCHULMAN:  Thank you, your Honor.  My apologies.
20         Is this better?
21         THE COURT:  No problem.
22         MS. SCHULMAN:  Yes.  With respect to the standard
23 conditions of supervised release, we would ask that the
24 condition with respect to Mr. Patterson not associating with
25 any known felons, that that be amended at least with respect to

M3B6PATS

1  his work for the Prison Professors Charitable organization.
2          THE COURT:  Good point.  Yes.  That, we will note that
3  in the judgment.  That makes perfect sense.
4          MS. SCHULMAN:  Thank you, your Honor.
5          THE COURT:  Very well.  But it will be amended only
6  with respect to that program.
7          MS. SCHULMAN:  Of course, your Honor.
8          THE COURT:  Yes.  Mr. Patterson, you have the right to
9  appeal this sentence.  Do you understand that?
10          THE DEFENDANT:  Yes, your Honor.
11          THE COURT:  And if you can't afford counsel for any
12  such appeal, the court will appoint one for you free of charge.
13  Do you understand that?
14          THE DEFENDANT:  Yes, your Honor.
15          THE COURT:  Very good.  Thanks a lot.
16          (Adjourned)
17
18
19
20
21
22
23
24
25